IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

VERONICA B. D'ANTIGNAC,      *
                             *
        Plaintiff,           *
                             *
        v.                   *           CV 110-116
                             *
DEERE & COMPANY, d/b/a JOHN  *
DEERE COMMERCIAL PRODUCTS,   *
INC., and ALFREDO RENZI.     *
                             *
        Defendants.          *

---

**O R D E R**

---

Presently pending before the Court are Defendants' motions for summary judgment.  (Doc. nos. 40, 42.)  For the reasons set forth below, these motions are **GRANTED**.

## I. BACKGROUND

### A. Factual Background

In June 2004, Plaintiff was hired by Defendant Deere & Company ("John Deere") as an assembly technician at its factory in Grovetown, Georgia.  (D'Antignac Dep. at 16, & Ex. 24.) During the course of her employment with John Deere, Plaintiff worked at various times with Defendant Alfredo Renzi ("Renzi"). Beginning on Plaintiff's first day of work and extending through June 2008, Renzi committed various acts which Plaintiff argues

constitute racial and sexual harassment. (<u>See generally</u> Doc. no. 63, Ex. 1 ("D'Antignac Decl.") ¶¶ 108-290.) On June 25, 2008, Renzi showed Plaintiff a noose and tried to put it over her head. (<u>See id.</u> ¶¶ 291-302.) The incident was reported, and John Deere terminated Renzi within a matter of hours. (D'Antignac Dep. at 65; Sinning Dep., Exs. 18-19.) Two days later, Plaintiff found a "big open loop" of rope draped on a tractor; it was "like a lasso," but "nothing like the one on June 25th." (D'Antignac Dep. at 75.) Following these two incidents, Plaintiff suffered from depression and anxiety and did not return to work. (D'Antignac Decl. ¶¶ 38-58, & Ex. 5.) Several days later, Plaintiff completed forms for disability and FMLA leave. (<u>Id.</u> ¶ 57, & Ex. 5.) John Deere then placed Plaintiff on short-term, and eventually long-term, disability leave.[1] (<u>Id.</u> ¶ 58.) By August 12, 2008, Plaintiff had obtained counsel, Michael Brown, to represent her and pursue discrimination claims against John Deere. (Brown Decl. ¶¶ 3-7, & Ex. 3.)

## B. Procedural History

On August 22, 2008, Plaintiff filed a charge with the EEOC alleging racial discrimination based upon the June 25, 2008

---

[1] In April 2010, John Deere sent Plaintiff a letter indicating that her long-term disability benefits would expire in July 2010. (D'Antignac Dep. at 219.) In May 2010, Plaintiff started feeling better. (<u>Id.</u> at 221.) On June 21, 2010, Plaintiff obtained a return to work certification from her physician. (<u>Id.</u> at 229, & Ex. 42.) On July 10, 2010, Plaintiff returned to work at John Deere. (<u>Id.</u> at 18; Sinning Decl. ¶ 10.)

noose incident. (D'Antignac Dep., Ex. 24.)  Plaintiff signed and swore to the contents of the charge under the penalty of perjury.  (Id.)  On June 1, 2010, the EEOC issued a dismissal and right to sue notice.  (D'Antignac Dep., Ex. 25.)  On August 31, 2010, Plaintiff filed the present action alleging both racial and gender discrimination in violation of Title VII of the Civil Rights Act of 1964.  (Doc. no. 1.)

On March 23, 2012, Renzi filed a motion for summary judgment contending that he cannot be held individually liable under Title VII.  (Doc. no. 40.)  In response, Plaintiff conceded that Renzi does not meet the statutory definition of an "employer" under Title VII.  (Doc. no. 61.)  The Court agrees. See Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2006). Accordingly, Renzi's motion for summary judgment is **GRANTED**.

Also on March 23, 2012, John Deere filed a motion for summary judgment and supporting brief arguing that (1) Plaintiff's discrimination claims are barred by the doctrine of judicial estoppel, (2) Plaintiff's claim for sexual harassment is barred because her EEOC charge referred only to racial discrimination, and (3) Plaintiff has not set forth sufficient evidence to create a genuine dispute of fact as to several of the required elements of her racial and sexual harassment claims.  (Doc. nos. 42, 44.)  The Court reaches only the first

issue, judicial estoppel, which pertains to Plaintiff's failure to disclose her discrimination claims in her bankruptcy case.

### C. Bankruptcy Proceeding

On February 22, 2005, Plaintiff voluntarily filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Georgia. In re D'Antignac, No. 05-10620-SDB, Doc. no. 1 (Bankr. S.D. Ga.). Plaintiff jointly filed her Chapter 13 petition with her then-husband, Rickie D'Antignac. (Id.) On her schedule of assets form, Plaintiff indicated that she had no "contingent or unliquidated claims." (Id. at 9.) On her statement of financial affairs form, Plaintiff indicated that she was not a party to any suits or administrative proceedings within one year prior to the filing of her bankruptcy petition. (Id. at 28.) Plaintiff made these representations under penalty of perjury. (Id. at 2, 26, 33.)

Under Plaintiff's proposed Chapter 13 plan, unsecured creditors would be paid pro-rata from funds remaining after payment of secured creditors and priority claims over a period of thirty-six months. (Bankr. Doc. no. 2.) On August 8, 2005, the Bankruptcy Court confirmed the plan. (Bankr. Doc. no. 34.) At that time, twelve creditors held unsecured claims in a total amount of $28,463.27. (Bankr. Doc. no. 35.)

4

On November 3, 2008, the Chapter 13 Trustee notified Plaintiff that the final disbursements to her creditors had been made according to the plan and her wages would no longer be withheld. (Bankr. Doc. no. 50.) On November 5, 2008, the Bankruptcy Court granted Plaintiff a discharge under 11 U.S.C. § 1328(a). (Bankr. Doc. no. 51.) According to the Chapter 13 Trustee's Final Report and Account, Plaintiff's twelve unsecured creditors were paid only 38.5% of the amount of their respective claims. (Bankr. Doc. no. 54.) On February 5, 2009, the Bankruptcy Court entered a final decree and closed the bankruptcy proceeding. (Bankr. Doc. no. 55.)

The bankruptcy docket reflects that Plaintiff was represented by Charles W. Wills of Klosinki Overstreet LLP and John P. Wills of Fowler & Wills throughout the entirety of her bankruptcy proceeding. When Plaintiff filed her EEOC charge in August 2008, Plaintiff did not amend her bankruptcy schedules or otherwise inform the Bankruptcy Court of her discrimination claims against Defendants. (D'Antignac Dep. at 194; D'Antignac Decl. ¶¶ 30-31.)

On June 15, 2012, after John Deere moved for summary judgment of Plaintiff's Title VII claims on the basis of judicial estoppel and other grounds, Plaintiff moved to reopen her Chapter 13 case in order to amend her schedules. (Bankr.

Doc. no. 56.) Plaintiff's motion to reopen is currently pending before the Bankruptcy Court.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-

6

movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a

7

material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of the Court gave Plaintiff notice of the motions for summary judgment and informed her of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. nos. 41, 43.)   Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied.   The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

### III. DISCUSSION

Defendant John Deere argues that Plaintiff's employment discrimination claims are barred by the doctrine of judicial estoppel because Plaintiff failed to disclose her discrimination

claims to the Bankruptcy Court while her Chapter 13 case was ongoing. Plaintiff counters that (1) there was no duty to disclose her claims, (2) even if there was such a duty, her Title VII claims did not arise until after the EEOC issued a right-to-sue notice, which was after her bankruptcy discharge, and (3) there is insufficient evidence to find that she intentionally made an inconsistent position under oath or otherwise intended to manipulate the judicial system. The Court addresses each of these arguments but first provides a brief overview of the doctrine of judicial estoppel.

### A. Judicial Estoppel

"Judicial estoppel is an equitable doctrine invoked at a court's discretion." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002). Under this doctrine, a party is precluded from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. Id. "The purpose of the doctrine, 'is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" Id. (quoting New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001)).

In the Eleventh Circuit, courts consider two factors to determine whether judicial estoppel applies to a particular case. Id. "First, it must be shown that the allegedly

inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." Id. (quotations omitted). These two enumerated factors are not inflexible or exhaustive, and courts must always give due consideration to the particular circumstances of the case. Id. at 1286.

These factors have been applied in cases with circumstances and procedural postures quite similar to the present case. Indeed, the Eleventh Circuit has, on numerous occasions, applied the doctrine of judicial estoppel and affirmed grants of summary judgment against plaintiffs pursuing employment discrimination claims that were not disclosed in bankruptcy. See, e.g., Robinson v. Tyson Foods, Inc., 595 F.3d 1269 (11th Cir. 2010); Casanova v. PRE Solutions, Inc., 228 Fed. Appx. 837 (11th Cir. 2007); Barger v. City of Cartersville, 348 F.3d 1289 (11th Cir. 2003); De Leon v. Comcar Indus., Inc., 321 F.3d 1289 (11th Cir. 2003); Burnes, 291 F.3d 1282.

The Court now addresses (1) whether Plaintiff was required to disclose her EEOC charge to the Bankruptcy Court, (2) whether Plaintiff made inconsistent positions under oath, and (3) whether Plaintiff intended to make a mockery of the judicial system.

### B. Duty to Disclose

"A debtor seeking shelter under the bankruptcy laws must disclose all assets, *or potential assets*, to the bankruptcy court." Burnes, 291 F.3d at 1286 (emphasis added) (citing 11 U.S.C. §§ 521(1), 541(a)(7)). "Full and honest disclosure in a bankruptcy case is crucial to the effective functioning of the federal bankruptcy system." Id. (internal quotations omitted). Importantly, "[t]he duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change." Id. This statutory duty to disclose changes in assets applies in both Chapter 7 and Chapter 13 proceedings. Robinson, 595 F.3d at 1274.

Plaintiff points out that the EEOC did not issue a right-to-sue notice until after her bankruptcy discharge and argues that she had no duty to disclose her discrimination claims until the right-to-sue notice was issued. The Court disagrees. As the Eleventh Circuit explained:

> Even though Plaintiff did not file a *lawsuit* before or during the pendency of his bankruptcy petition, the pending EEOC charges constitute "administrative proceedings" and "[o]ther contingent and unliquidated claims" that Plaintiff was required to disclose on his [statement of financial affairs form]. The "property of [the] bankruptcy estate includes all *potential* causes of action existing at [the] time petitioner files for bankruptcy."

11

Casanova, 228 Fed. Appx. at 841 (emphasis in original) (quoting Barger, 348 F.3d at 1292). Accordingly, Plaintiff had a statutory duty to amend her asset schedules to reflect her potential discrimination claim when she filed her EEOC charge.

Plaintiff cites to Waldron v. Brown (In re Waldron), 536 F.3d 1239 (11th Cir. 2008), for the proposition that she had no free-standing duty to disclose her discrimination claims. Waldron, however, held that (1) a debtor's claims for legal relief that arose after the confirmation of a Chapter 13 plan but before the completion of the plan were property of the bankruptcy estate, and (2) the bankruptcy court did not abuse its discretion by requiring the debtor to amend the schedule of assets. Id. at 1240-41. Contrary to Plaintiff's position, Waldron actually reaffirmed Eleventh Circuit precedent "recognizing a debtor's continuing duty to disclose changes in his financial situation during the pendency of his bankruptcy." Id. at 1244 (citing Burnes, 291 F.3d at 1286). Therefore, in Waldron, the debtor's claims for under-insured motorist benefits, which arose post-confirmation but before the Chapter 13 case was dismissed, closed, or converted, were property of the estate and subject to the duty to disclose. Id. at 1242.

Ignoring these holdings, Plaintiff repeatedly relies on the following quote from Waldron: "We do not hold that a debtor has a free-standing duty to disclose the acquisition of any property interest after the confirmation of his plan under Chapter 13." Id. at 1246. Plaintiff takes this quote out of context and distorts its meaning. In Waldron, the debtor "argue[d] that a duty to disclose assets acquired after confirmation unduly burdens Chapter 13 debtors" because they would have to amend their bankruptcy schedules every time they received wages, bought groceries, or filled up a tank of gas. Id. at 1245. In response, the Eleventh Circuit pointed out that "these assets are the kind that are taken into account by the debtor's plan or are consumed after having been purchased with assets vested in the debtor at confirmation." Id. at 1245-46. Thus, the court clarified that there is not a duty to disclose "*any* property interest" acquired post-confirmation, but the "bankruptcy court is entitled to learn about a substantial asset that the court had not considered when it confirmed the debtor's plan." Id. (emphasis added). Legal claims arising post-confirmation, such as a suit for under-insured motorist benefits or the filing of EEOC charges, fall into the latter category and must be disclosed to the bankruptcy court. See id. at 1242; Casanova, 228 Fed. Appx. at 841.

13

In summary, Plaintiff had a duty to disclose the filing of her EEOC charge to the Bankruptcy Court.

### C. Inconsistent Positions Under Oath

The Eleventh Circuit has held that "failure to timely amend a Chapter 13 reorganization plan to reflect a pending claim while simultaneously pursing that claim in another court of law constitutes inconsistent positions under oath." Robinson, 595 F.3d at 1275 (citing Ajaka v. BrooksAmerica Mortg. Corp., 453 F.3d 1339, 1344 (11th Cir. 2006)); see also Burnes, 291 F.3d at 1286. When Plaintiff "submitted her bankruptcy schedules under oath, she also submitted that she would update those schedules as required." Robinson, 595 F.3d at 1275. Thus, when Plaintiff filed an EEOC charge against Defendants, she had a "sworn duty to disclose" that claim to the Bankruptcy Court. Id.

Plaintiff did not amend her schedule of assets or statement of financial affairs forms when she filed her EEOC charge on August 22, 2008,[2] or at any time before the closing of her Chapter 13 proceeding. (See D'Antignac Dep. at 194; D'Antignac Decl. ¶¶ 30-31.) "By failing to update her bankruptcy schedule to reflect her pending claim," Plaintiff "represented that she had no legal claims to the bankruptcy court" while simultaneously pursuing her discrimination claims before the

---

[2] When Plaintiff filed her EEOC charge, she swore to its contents under the penalty of perjury. (D'Antignac Dep., Ex. 24.)

14

EEOC.  Robinson, 595 F.3d at 1275.  "These two actions, both taken under oath, are clearly inconsistent."  Id.

The Court also notes that in moving to reopen her bankruptcy case, Plaintiff, through her bankruptcy counsel, represented that when the alleged discrimination occurred, she "did not seek immediate consultation of a lawyer for her claim, and thus was unaware that she may have needed to amend her schedules to add her discrimination claims against John Deere and Renzi."  (Bankr. Doc. no. 56 ¶ 4.)  However, in this action, Plaintiff submitted a sworn declaration stating that she *did* consult with an attorney, Michael Brown, about her discrimination claims in early August 2008.[3]  (D'Antignac Decl. ¶¶ 62-65, 91-93; see also Brown Decl. ¶¶ 3-7, 12.)  These two positions are obviously inconsistent.

### D. Intentional Mockery of the Judicial System

Because Plaintiff has taken inconsistent positions under oath, the issue of judicial estoppel centers on the second factor: whether Plaintiff *intentionally* misled the Bankruptcy Court.  "[T]he doctrine of judicial estoppel applies in situations involving intentional contradictions, not simple error or inadvertence."  Burnes, 291 F.3d at 1286.  The Eleventh

---

[3] This information emerged in response to John Deere's argument that Plaintiff's failure to allege sexual harassment in her EEOC charge bars any claim for sexual harassment.  Plaintiff's former attorney sent a letter to the EEOC seeking to amend the charge.  (Brown Decl., Ex. 1.)

Circuit has often held that deliberate or intentional manipulation of the judicial system can be inferred from the record. Id. at 1287; Robinson, 595 F.3d at 1275. A "debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." Burnes, 291 F.3d at 1287 (quoting In re Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir. 1999)). Thus, the requisite intent can be inferred if the debtor "both knew about the undisclosed claims and had a motive to conceal them from the bankruptcy court." De Leon, 321 F.3d at 1291; accord Casanova, 228 Fed. Appx. at 840-41; Robinson, 595 F.3d at 1275; Barger, 348 F.3d at 1295. Where knowledge and motive are present, "intent may be properly inferred from a relatively sparse record." Bennett v. Flagstar Bank, No. 2:10-cv-181, 2011 WL 6152940, at *4 (S.D. Ga. Dec. 8, 2011) (citing Robinson, 595 F.3d at 1275). The relevant inquiry is the debtor's intent "at the time of nondisclosure." Casanova, 228 Fed. Appx. at 841.

### 1. Knowledge

Plaintiff indisputably had knowledge of her employment discrimination claims while her bankruptcy case was pending. Plaintiff filed her EEOC charge in August 2008, which was prior to her discharge in November 2008 and the closing of the Chapter 13 case in February 2009. See Burnes, 291 F.3d at 1288 (finding

16

that debtor who filed and pursued employment discrimination claims during pendency of Chapter 13 case clearly had knowledge of the claims).

### 2. Motive

"[A] financial motive to secret assets exists under Chapter 13 . . . because the hiding of assets affects the amount to be discounted and repaid." De Leon, 321 F.3d at 1291; cf. Burnes, 291 F.3d at 1288 (finding that Chapter 13 debtor "stood to gain an advantage" by concealing his employment discrimination claims because it was "unlikely he would have received the benefit of a conversion to Chapter 7 followed by a no asset, complete discharge had his creditors, the trustee, or the bankruptcy court known of a lawsuit claiming millions of dollars in damages"); Barger, 348 F.3d at 1296 ("Omitting the discrimination claims from the schedule of assets appeared to benefit [the Chapter 7 debtor] because, by omitting the claims, she could keep any proceeds for herself and not have them become part of the bankruptcy estate.").

Turning to the specifics of this case, there is substantial evidence of Plaintiff's motive to conceal her employment discrimination claims from the Bankruptcy Court. At the time that Plaintiff filed her EEOC charge in August 2008, Plaintiff's twelve unsecured creditors held claims totaling $28,463.27 but were being paid at a rate that would return only 38.5% of the

17

value of their respective claims.  At the same time, the unpaid remainders of the unsecured claims were scheduled to be extinguished imminently and were so extinguished by the Bankruptcy Court's discharge on November 5, 2008.

In this same time frame, it is clear that Plaintiff attached tremendous value to her discrimination claims.  On November 25, 2008, which was prior to the closing of her bankruptcy case, Plaintiff's counsel sent a demand letter to John Deere's counsel.  (Brown Decl., Ex. 8.)  The letter stated that "my client believes that she should be entitled to substantial damages," and ultimately demanded "$2,000,000.00 as compensation in damages."  (Id.)  Plaintiff later testified that she believes her discrimination claims are worth at least one million dollars.  (D'Antignac Dep. at 225-26.)  This is even stronger evidence of motive than existed in Robinson, where the court inferred that the plaintiff "obviously had some expectation of monetary recovery, as she sought compensatory, punitive and liquidated damages in her lawsuit."  595 F.3d at 1276; see also Kroll v. Home Depot U.S.A., Inc., No. 2:02-cv-113, Doc. no. 42 at 7-8 (S.D. Ga. Aug. 20, 2013) (Alaimo, J.) (finding that debtor had knowledge of undisclosed Fair Labor Standards Act claims and motive to conceal them where he sent a demand letter two days after his bankruptcy discharge).

Moreover, Plaintiff could not have simply forgotten about

her bankruptcy case during this time period. On October 15, 2008, the Bankruptcy Court entered an Order releasing Plaintiff's wages and, on October 26, 2008, Plaintiff received – for the first time in several years – a paycheck without any deductions being sent to the Chapter 13 Trustee. (Bankr. Doc. no. 47; D'Antignac Decl., Ex. 4.) On November 3, 2008, Plaintiff and her bankruptcy counsel received a notice from the Chapter 13 Trustee explaining the release of wages and the current posture of the bankruptcy case. (Bankr. Doc. no. 50.) At that time, Plaintiff could and should have notified the Bankruptcy Court, the Chapter 13 Trustee, and her creditors about her potentially valuable discrimination claims.

However, the undisputed evidence is that Plaintiff took no action to disclose her claims even though there was a five month window between the filing of her EEOC charge on August 22, 2008, and the final decree closing her bankruptcy case on February 5, 2009. (See D'Antignac Dep. at 194; D'Antignac Decl. ¶¶ 30-31.) Similarly, in Robinson, "[t]he district court focused on the nine month window between when [the plaintiff] brought her claim against [her employer] and when she was dismissed from bankruptcy. Specifically, the district court found that if [the plaintiff]'s claim had settled in this time period, she would have been able to keep the proceeds for herself and denied the creditors a fair opportunity to claim what was rightfully

19

theirs." 595 F.3d at 1275-76.

In summary, Plaintiff had knowledge of her discrimination claims during the pendency of her Chapter 13 case and a clear motive to conceal those claims. Having duly considered the particular circumstances of this case, the Court infers that Plaintiff intended to manipulate the judicial system.

### E. Additional Factors

The Court has focused on the two primary factors guiding the application of judicial estoppel in the Eleventh Circuit: inconsistent positions under oath and intentional manipulation of the judicial system. Here, both are met. Nevertheless, "these two enumerated factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case." Burnes, 291 F.3d at 1286. The Court now turns to other circumstances in this case which have been found relevant by other courts in this circuit.

#### 1. Access to Counsel

The Bankruptcy Court docket reflects that Plaintiff was represented by counsel for the entire duration of her Chapter 13 case. Cf. id. at 1284 (noting that the plaintiff whose undisclosed claims were estopped "had a lawyer for the entirety of his bankruptcy proceeding"); Barger, 348 F.3d at 1295 (holding that the plaintiff was barred by judicial estoppel - even though the plaintiff notified her bankruptcy attorney about

her discrimination suit - because she voluntarily chose her attorney and could not "avoid the consequences of the acts or omissions of this freely selected agent").

In addition to her bankruptcy counsel, Plaintiff also obtained Michael Brown as counsel to pursue her discrimination claims. (Brown Decl. ¶¶ 3-4.) By August 12, 2008, at the latest, he was sending demand letters and advising Plaintiff to file the EEOC charge. (Id. at ¶¶ 5-7, & Ex. 3.) Yet, despite this dual representation, there is no evidence that Plaintiff ever informed her bankruptcy counsel about the discrimination claims or told Mr. Brown about her ongoing bankruptcy proceeding.[4] These facts strengthen the inference that Plaintiff intentionally concealed her claims during the five month window when both cases were pending.

### 2. Prejudice

Another factor is whether Plaintiff successfully misled a court and derived an unfair advantage over an opposing party.[5]

_____

[4] In Ajaka, there was "significant evidence" that the plaintiff's attorneys intended to amend the bankruptcy schedules before any defendant invoked judicial estoppel, and that evidence was sufficient to create a genuine issue of material fact as to whether the plaintiff intended to manipulate the judicial system. 453 F.3d at 1346. In contrast, there is no evidence in this case that Plaintiff or her attorneys ever sought to disclose her discrimination claims to the bankruptcy court before John Deere raised the issue of judicial estoppel.

[5] There is no requirement that the party invoking the judicial estoppel show prejudice. Ajaka, 453 F.3d at 1345; see also Burnes, 291 F.3d at 1286 ("[S]ince the doctrine is intended to protect the judicial system, those asserting judicial estoppel need not demonstrate individual prejudice."). Thus, the fact that John Deere has not been prejudiced in

See Ajaka, 453 F.3d at 1344 (citing New Hampshire, 532 U.S. at
751.)   Here, Plaintiff successfully misled the Bankruptcy Court
and gained an unfair advantage over her creditors.   "The
disclosure of post-confirmation assets [in Chapter 13 cases]
gives the trustee and creditors a meaningful right to request,
under [11 U.S.C. § 1329], a modification of the debtor's plan to
pay his creditors."  Waldron, 536 F.3d at 1245.  Had Plaintiff
disclosed the filing of her EEOC charge, which occurred post-
confirmation but pre-discharge, her creditors would have had the
opportunity to "move the bankruptcy court to modify the plan to
increase payments made by the debtor to satisfy a larger
percentage of the creditors' claims."   Id.   Unfortunately,
Plaintiff failed to make the requisite disclosures and her
creditors were never informed of her potentially valuable
discrimination claims prior to the closing of the bankruptcy
case.

     Therefore, this case is distinguishable from Ajaka, 453 F.3d
at 1345-46, which held that judicial estoppel did not bar Truth
in Lending Act claims where plaintiff's bankruptcy creditors
received notice of the claims shortly after confirmation and had
an opportunity to revoke the Chapter 13 plan.   For the same
reason, this case is unlike Strauss v. Rent-A-Ctr., Inc., 192

---

this matter does not preclude the application of judicial estoppel in this
case.

Fed. Appx. 821, 823 (11th Cir. 2006), which held that judicial estoppel did not apply where the plaintiff was not successful in misleading the first tribunal because the bankruptcy court "never entered any order discharging any of [the plaintiff's] debts." See also Thompson v. Quarles, 392 B.R. 517, 527, 529 (S.D. Ga. 2008) (Alaimo, J.) (declining to bar plaintiffs' undisclosed personal injury claims where judicial estoppel argument was raised while the bankruptcy case was ongoing, there was still time to give creditors an opportunity to modify the plan, and the integrity of the bankruptcy proceeding was not seriously impaired). Similarly, Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1269-72 (11th Cir. 2004), is distinguishable because the plaintiff notified the bankruptcy court of her discrimination claims before her employer raised judicial estoppel as a defense, and the Chapter 7 Trustee intervened in the discrimination suit as the real party in interest.[6] Unlike the present case, there was minimal prejudice to bankruptcy creditors in these other cases.

Plaintiff now seeks to reopen her bankruptcy proceeding to include the undisclosed claims. In Burnes, the Eleventh Circuit found that a motion to reopen under similar circumstances "acknowledge[d], at least implicitly, that disclosing [an

---

[6] See also Thompson, 392 B.R. at 528 n.12 (explaining why Parker is inapplicable to Chapter 13 cases).

employment discrimination claim] would have likely changed the result of his bankruptcy." 291 F.3d at 1288. Here, however, the motion to reopen is more explicit. Plaintiff acknowledges that "she may have needed to amend her schedules" and that reopening her Chapter 13 case "has the potential to significantly benefit the Debtor's bankruptcy estate as unsecured creditors who originally were paid a 38.5% dividend potentially could receive a substantial amount more." (Bankr. Doc. no. 56 ¶¶ 4, 16.)

Under these circumstances, allowing Plaintiff to reopen her bankruptcy case could lead to perversion of the judicial process. As stated in <u>Burnes</u>:

> In an attempt to remedy the situation, [the plaintiff] argues that he should now be allowed to re-open his bankruptcy case to amend his filings and include his lawsuit against [his employer]. We disagree. The success of our bankruptcy laws requires a debtor's full and honest disclosure. Allowing [the plaintiff] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets.

291 F.3d at 1288; <u>see also</u> <u>Barger</u>, 348 F.3d at 1297 ("Finally, Barger's attempt to reopen the bankruptcy estate to include her discrimination claim hardly casts her in the good light she would like. She only sought to reopen the bankruptcy estate

24

after the defendants moved the district court to enter summary judgment against her on judicial estoppel grounds."). As in Burnes and Barger, Plaintiff moved to reopen her Chapter 13 case only after the prospect of judicial estoppel was raised by John Deere. This Court will not permit such tactics and incentivize conduct which places the integrity of the judicial process in jeopardy.

### IV. CONCLUSION

In summary, Plaintiff took inconsistent positions under oath. Further, the Court infers that Plaintiff intentionally manipulated the judicial system, as there is substantial evidence that she had knowledge of her discrimination claims during the pendency of her bankruptcy proceeding and motive to conceal those claims. Additional factors strengthen the inference of intent and favor the application of judicial estoppel. Accordingly, Plaintiff's employment discrimination claims against John Deere are hereby barred by the doctrine of judicial estoppel.[7]

---

[7] The Eleventh Circuit has limited the application of judicial estoppel to claims for monetary relief and allowed the debtor's undisclosed claims for injunctive relief to proceed because a claim for injunctive relief generally will not add value to the bankruptcy estate even if properly disclosed. See Burnes, 291 F.3d at 1288-89; Barger, 348 F.3d at 1297; Casanova, 228 Fed. Appx. at 841. Here, however, Plaintiff seeks only damages and makes no prayer for injunctive relief. (See Compl. ¶¶ 19-22.) Thus, the entirety of Plaintiff's Title VII suit is barred by judicial estoppel.

Based upon the foregoing, Defendants' motions for summary judgment (doc. nos. 40, 42) are **GRANTED**.  The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of Defendants.  The Clerk shall terminate all deadlines and motions, and **CLOSE** the case.

**ORDER ENTERED** at Augusta, Georgia, this ___13th___ day of March 2013.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA